UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRY GENE THOMAS,

       Plaintiff,

v.                                                CASE NO. 3:16-cv-939-J-34MCR

ACTING COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income ("SSI"). On April 13, 2012, Plaintiff applied for SSI alleging that he became disabled on January 1, 1989. (Tr. 300-05.) Plaintiff's claim was denied initially on June 25, 2012, and upon reconsideration on September 10, 2012. (Tr. 168-86, 191-95.)

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed .R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

The first hearing before the assigned Administrative Law Judge ("ALJ") was held on January 22, 2014 (Tr. 60-69), which was continued until July 25, 2014 (Tr. 89-126).  At the July 25, 2014 hearing, Plaintiff requested a supplemental hearing that was held on January 23, 2015.  (Tr. 70-88.)  Plaintiff was represented by an attorney at each of the three hearings.  (Tr. 60, 70, 89.)  The ALJ issued an unfavorable opinion on January 30, 2015, finding Plaintiff not disabled from January 1, 1989 through April 13, 2012, the date of the application.  (Tr. 20-42.)

Plaintiff is appealing the ALJ's decision that he was not disabled.  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **REVERSED and REMANDED**.

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  However, reversal is mandated if the court finds that there was a failure on the part of the Commissioner "to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed . . ."  *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

**II.    Discussion**

On appeal, Plaintiff argues that the ALJ failed to apply the correct legal standards to the opinions of Plaintiff's treating physicians, Drs. Sims and Marra. Defendant responds that the ALJ applied the correct legal standards when she

3

evaluated Drs. Sims and Marra's opinions, and substantial evidence supports her decision to afford "no significant weight" to those opinions.

### A. Relevant Evidence

#### 1. Dr. Sims's Records

Stephanie Sims, M.D., Plaintiff's treating psychiatrist, began treating Plaintiff in December of 2010. (Tr. 645 (noting initial evaluation as 12-10-10).) Consistently throughout all of her treatment notes on record, Dr. Sims noted that Plaintiff's prognosis was poor and diagnosed Plaintiff with mood disorder not otherwise specified, antisocial personality traits, and a global assessment of functioning ("GAF") of 55.[2] (Tr. 607-621, 982-990.) On November 2, 2012, Plaintiff presented to Dr. Sims with a chief complaint of depression. (Tr. 619.) Dr. Sims noted Plaintiff's mood as irritable and his affect as dysphoric and constricted. (Tr. 620.) On February 1, 2013, Plaintiff again presented to Dr. Sims with a chief complaint of depression. (Tr. 616.) Dr. Sims noted Plaintiff's

---

[2] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994). A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.* A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting), OR serious impairment in social or occupational functioning (*e.g.*, no friends, unable to keep a job).

mood as irritable and his affect as dysphoric and constricted. (Tr. 617.) On August 2, 2013, Plaintiff presented to Dr. Sims with a chief complaint of anxiety. (Tr. 613.) Dr. Sims noted Plaintiff's mood as "ok" and his affect as euthymic. (Tr. 614.) On November 1, 2013, Plaintiff again presented to Dr. Sims with a chief complaint of anxiety. (Tr. 610.) Dr. Sims noted Plaintiff's mood as "ok" and his affect as euthymic. (Tr. 611.) On January 3, 2014, Plaintiff went to Dr. Sims's office unscheduled and reported that he had been experiencing anger outbursts. (Tr. 607.) Dr. Sims noted that Plaintiff had been hospitalized in November due to altered mental status and was found to have persistently elevated ammonia levels. (*Id.*) She also increased Plaintiff's dosage of medicine for mood stabilization and noted Plaintiff's mood as "ok" and his affect as constricted. (Tr. 609.)

On February 20, 2014, Dr. Sims completed a Mental Residual Functional Capacity Questionnaire ("MRFC"). (Tr. 645.) In the evaluation, she noted that Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation, and Plaintiff's impairments lasted or can be expected to last at least twelve months. (Tr. 647.) Dr. Sims further opined that Plaintiff suffers from significant psychological limitations that would impact his ability to work. (Tr. 645-648.) She reported that Plaintiff was unable to perform certain designated tasks or functions on a "regular, reliable

5

and sustained basis." (Tr. 646-647.)  For example, Dr. Sims opined that Plaintiff was unable to: (a) work in coordination with or proximity to others without being unduly distracted, (b) complete a normal workday and workweek without interruptions from psychologically based symptoms, (c) accept instructions and respond appropriately to criticism from supervisors, (d) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (e) respond appropriately to changes in a routine work setting, (f) deal with normal work stress, (g) set realistic goals or make plans independently of others, and (h) deal with the stress of semiskilled and skilled work.[3]  (Tr. 647.)

On May 13, 2014, Dr. Sims noted that she received a call from one of Plaintiff's other treating doctors, stating that Plaintiff was "very upset" because his brother committed suicide.  (Tr. 990.)  Dr. Sims noted that she called Plaintiff, refilled his prescription of Ativan, and provided supportive psychotherapy.  (*Id.*)  On June 6, 2014, Dr. Sims noted Plaintiff's mood was depressed and his affect was constricted.  (Tr. 987.)  On September 5, 2014, Plaintiff presented to Dr. Sims for a follow up treatment of depression.  (Tr. 982.)  Dr. Sims noted that Plaintiff's mood was depressed, and his affect was constricted.  (Tr. 983.)

---

[3] Dr. Sims also opined that Plaintiff has or will have noticeable difficulty performing certain other tasks (as defined by more than 20% of the workday or workweek).  (Tr. 646-47.)

6

### 2. Dr. Marra's Records

Plaintiff's initial psychotherapy session with Jaime Marra, Ph.D., Plaintiff's treating psychotherapist, occurred on July 29, 2014. (Tr. 976.) Consistently throughout all of her treatment records, Dr. Marra diagnosed Plaintiff with a primary diagnosis of mood disorder not otherwise specified, and noted other issues to be psychosocial stressors and complaints of anxiety. (Tr. 957-978.) She also consistently reported a GAF score of 55. (*Id.*) At Plaintiff's initial psychotherapy session, Dr. Marra noted that Plaintiff's "treatment compliance has been low/noncompliant. His barriers to treatment include financial and legal. His strengths include willingness to engage in psychiatric/psychological treatment." (Tr. 977.) She also noted that "his mood was anxious. His affect was labile and congruent with mood. His thought process was clear but perseverative (re: worried and hyperfocused about his psychiatric medication treatment)." (*Id.*) Additionally, Dr. Marra noted that his prognosis was guarded for recovery. (*Id.*)

On September 5, 2014, Dr. Marra noted Plaintiff's mood as "euthymic and depressed. His affect was congruent with mood and dysphoric . . . Insight was poor. Judgment was poor." (Tr. 967.) She also noted that Plaintiff's prognosis was poor for recovery, and "he has made minimal progress on initial treatment goals" due to canceling or not showing up to any of his scheduled psychotherapy sessions since the initial appointment. (*Id.*)

On November 19, 2014, Dr. Marra noted:

> [Plaintiff's] mood was anxious and depressed. His affect was dysphoric and congruent with mood . . . Judgment was limited/minimal . . . [Plaintiff] is continuing to attend regular medical and psychiatric appointments. However, he has been resistant to ongoing psychotherapy for some time . . . He will schedule a follow up with this writer in 6 weeks, which is about halfway between today's date and his next psychiatry follow up appointment.

(Tr. 958.)

On January 15, 2015, Dr. Marra completed a MRFC questionnaire. (Tr. 998-1001.) In her evaluation, Dr. Marra noted that Plaintiff had significant psychological limitations that impact his ability to work. (*Id.*) Specifically, Plaintiff was unable to perform certain designated tasks or functions on a "regular, reliable and sustained basis." (Tr. 999.) Dr. Marra's reported tasks and functions that Plaintiff is unable to perform are consistent with Dr. Sims's identification of tasks and functions that Plaintiff is unable to perform. (Tr. 647, 999.) Dr. Marra also noted that Plaintiff's impairments are reasonably consistent with the symptoms and functional limitations described in the evaluation, and they lasted or can be expected to last at least twelve months. (Tr. 1000.)

### B.  Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given

to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. See *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-

T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); see also *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); see also SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).  While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

### C. The ALJ's Decision

In reaching her decision, the ALJ found that Plaintiff had "the following severe impairments: HIV, disorders of the spine, disorders of the knees, asthma, seizure disorder, affective disorder, and personality disorder." (*Id.*)  At step three in the evaluation process, the ALJ found that Plaintiff "[did] not have an impairment or combination of impairments that [meet] or medically [equal] the

severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1." (Tr. 19.)

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except:

> no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, and scaffolds; no concentrated exposure to hazards (machinery, heights, etc.) or pulmonary irritants (dust, fumes, odors, gases, poor ventilation); no more than simple routine, repetitive tasks; and no more than occasional interaction with supervisors, co-workers, and the general public.

(Tr. 28.) In making this finding, the ALJ gave "no significant weight" to Dr. Sims's treating opinions regarding Plaintiff's limitations and ability to work. (Tr. 39) In discounting Dr. Sims's opinions, the ALJ reasoned: "[Dr. Sims's] opined limitations are not well supported by treatment records and level of care (outpatient medication management approximately every 2 months) and are inconsistent with a GAF of 55, which represents only moderate symptoms or moderate difficulty in one area of functioning." (*Id.*) The ALJ also gave "no significant weight" to the treating opinions of Dr. Marra because her opined severity is not well supported by treatment records. Furthermore, Dr. Marra's records document multiple no shows and/or cancellations. Dr. Marra has also noted the claimant has been resistant to ongoing psychotherapy." (*Id.*)

11

At step five, with the benefit of testimony from a vocational expert, the ALJ determined that Plaintiff has no past relevant work (Tr. 40), but "considering the [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 41 (citations omitted).) As such, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 13, 2012, the date the application was filed." (Tr. 42 (citations omitted).)

### D. The ALJ's Decision Is Not Supported by Substantial Evidence

The Court agrees with Plaintiff that the ALJ's failure to apply the correct legal standards to the opinions of Plaintiff's treating physicians, Drs. Sims and Marra, warrants a remand. While the ALJ clearly articulated the weight she assigned to the two treating physicians, she did not clearly articulate or provide substantial evidence in support of her reasons for discounting their opinions.

The ALJ assigned "no significant weight" to Dr. Sims's medical opinions. (Tr. 39.) At the time that Dr. Sims filled out the MRFC in February of 2014, Plaintiff had been seeing Dr. Sims for psychiatric visits every one to three months for approximately three years, starting in December of 2010. He also continued to see Dr. Sims afterwards. (Tr. 645.) Accordingly, Dr. Sims is one of Plaintiff's treating doctors and her opinion must be given substantial weight unless the ALJ shows good cause for finding otherwise. The ALJ's first reason for discounting

Dr. Sims's opinion, that her opined limitations are "not well supported by treatment records," is vague and conclusory, thereby frustrating judicial review. *See Beard v. Colvin*, Case No. 3:14-cv-18-J-JRK, 2015 WL 1138447, at *6 (M.D. Fla. Mar. 13, 2015) (stating that the ALJ's failure to explain how the treating physician's opinion "is inconsistent with the 'overall evidence' . . . frustrates judicial review and precludes a finding that the ALJ's treatment of [the treating physician's] opinion is supported by substantial evidence"). The ALJ failed to specify whether she believes that Dr. Sims's opinions are not supported by her own records or by the medical record as a whole. Thus, the undersigned cannot evaluate whether the ALJ's conclusion is supported by substantial evidence. "What is required is that the ALJ state specifically the weight accorded to each item of evidence and why [s]he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ also failed to cite any specific medical records that she found inconsistent with Dr. Sims's opinions. *See Anthony v. Astrue*, Case No. 3:11-cv-355-J-JRK, 2012 WL 3536989 at *4 (M.D. Fla. Aug. 14, 2012) (reversing Commissioner's decision because no analysis or explanation was provided by the ALJ to discount the opinion of a treating physician); *see also Green v. Astrue,* 481 F. Supp. 2d 1241,

13

1246 (N.D. Ala. 2007) (finding that an ALJ's "conclusion [was] not supported by the record. The ALJ does not explain how clinical support is lacking or how the statements are contradicted.")

The ALJ's next reason for discounting Dr. Sims's opinions is that her opined limitations are not supported by the "level of care (outpatient medication management approximately every 2 months)." (Tr. 39.)  Plaintiff argues, and the undersigned agrees, that the ALJ's reasoning in this regard is not supported by substantial evidence because the ALJ failed to take into consideration that beginning in July of 2014, Plaintiff was being seen by Dr. Sims and Dr. Marra, at alternating intervals, and was therefore receiving psychiatric care more often than every two months. (Tr. 958 ("[Plaintiff] will schedule a follow up with this writer in 6 weeks, which is about halfway between today's date and his next psychiatry follow up appointment.").) Additionally, the record shows that Dr. Sims consistently prescribed Plaintiff several medications for mental health, and she consistently diagnosed him with depression and antisocial personality traits. (Tr. 606-20, 983.) On January 3, 2014, Dr. Sims increased Plaintiff's dosage of Zyprexa for mood stabilization, and in subsequent appointments noted that Plaintiff's mood was "irritable," indicating that the increased dosage was not helping Plaintiff. (Tr. 609, 982-90.) Objective evidence of mental impairments is difficult to prove, but "[b]oth physiological and psychological medical evidence is

objective, because each is amenable to external testing." *Luna v. Bowen*, 834 F.2d 161, 162 (10th Cir. 1987).  Additionally, 20 C.F.R. § 416.902(l) states that "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception and must also be shown by observable facts that can be medically described and evaluated."  As Plaintiff's treating doctor, Dr. Sims observed and evaluated Plaintiff's psychological abnormalities for several years.

      The ALJ's final reason for discounting Dr. Sims's opinions is that they are "inconsistent with a GAF of 55 which represents only moderate symptoms OR moderate difficulty in one area of functioning."  (Tr. 39 (citations omitted) (emphasis in original).)   However, the ALJ failed to articulate how the GAF scores are inconsistent with Dr. Sims's opinions.  Nevertheless, while GAF scores can be used to evaluate the weight given to opinion evidence, *see Carroll v. Comm'r of Soc. Sec.*, 453 F.App'x 889, 893 (11th Cir. 2011) (considering a GAF score as a valid reason to discount a treating physician's opinion in combination with two other reasons), "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." *Gasaway v. Astrue*, No.: 8:06-cv-1869-T-TGW, 2008 WL 585113 at *4 (M.D. Fla. Mar. 3, 2008).  As the Court finds that the ALJ's other reasons for discounting Dr.

Sims's opinions do not meet the legal standards for discounting a treating physician's medical opinion as stated above, reliance on the GAF score alone is inadequate support of the weight the ALJ assigned to Dr. Sims's opinion.[4]  *See, e.g., Greene v. Comm'r of Soc. Sec.*, No. 6:11-cv-1357-Orl-GJK, 2013 WL 1278091, at *7 (M.D. Fla. Mar. 28, 2013) ("[T]he ALJ's reliance on a GAF score as a basis to discount a treating physician's opinion is circumspect.  In any event, the ALJ does not articulate how the GAF score is inconsistent with [the treating physician's] opinions.  Even if it was inconsistent, courts have determined that a GAF score is not a basis to discount a treating physician's opinion.") (citations omitted).

The ALJ also assigned "no significant weight" to Dr. Marra's treating opinions with respect to Plaintiff's limitations.  (Tr. 39.)  At the time that Dr. Marra filled out the MRFC, Plaintiff had attended five psychotherapy sessions with Dr. Marra.  (Tr. 998.)  The ALJ noted that Dr. Marra had been seeing Plaintiff for psychotherapy sessions since July of 2014, but "her opined severity is not well supported by treatment records."  (Tr. 39.)   As discussed in further detail above,

---

[4] In fact, the latest edition of the Diagnostic and Statistical Manual of Mental Disorders has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).  Indeed, the Social Security Administration cautions that a "GAF score is never dispositive of impairment severity."  Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) REV (Oct. 14, 2014).

this reason is vague and conclusory, and cannot be said to be supported by substantial evidence. The undersigned finds that judicial review is once again frustrated as it is unclear how clinical support is lacking or how Dr. Marra's opinions are contradicted. *Green*, 481 F. Supp. 2d at 1246.

The ALJ's second reason for discounting Dr. Marra's opinion is that her "records document multiple no shows and/or cancellations. Dr. Marra has also noted the claimant has been resistant to ongoing psychotherapy." (Tr. 39.) However, it is clear that a mental disorder can affect an individual's ability to seek treatment. *See Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1255 (N.D. Ala. 2003) ("Sadly, the symptoms of mental disorders often include an inability to seek out the treatment and help necessary to treat such disorders."). Further, Dr. Marra noted in her treatment records that Plaintiff has financial and legal barriers to treatment, which the ALJ apparently failed to take into consideration. (Tr. 977.) Thus, the undersigned finds that substantial evidence does not support this reason for discounting the opinions of Dr. Marra.

The Commissioner argues that "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). However, in determining RFC, the ALJ must take into account the entire record, including the opined limitations stated by treating doctors. *Murphy v. Astrue*, No. 8:06-cv-1654-T-TBM, 2008 WL

126592, *4 n.5 (M.D. Fla. Jan. 10, 2008) ("Contrary to the Commissioner's assertion, a treating physician's opinion about what a claimant still can do is a medical source statement entitled to controlling weight and is not an opinion on an issue reserved to the Commissioner.").

The Commissioner also argues that Drs. Sims and Marra's MRFC evaluations do not include objective medical findings, and that the opinions contained therein are inconsistent with the record as a whole. However, the ALJ did not specifically state either of the points above in her decision, and the Eleventh Circuit has "decline[d] . . . to affirm simply because some rationale might have supported the ALJ's conclusion. Such an approach would not advance the ends of reasoned decision making." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984); *see also Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974)) ("The Supreme Court has held that a court may not accept appellate counsel's post hoc rationalizations for agency actions."). Therefore, the Court cannot consider these arguments.

Finally, the Court rejects the Commissioner's argument that Plaintiff ignored the ALJ's "extensive explanation of the overall record evidence" and "other statements in the decision." (Doc. 19 at 12.) Neither paragraph specifically referenced by the Commissioner addresses the MRFC evaluations

18

completed by Drs. Sims and Marra regarding Plaintiff's limitations. (Doc. 19 at 12, 13). Nevertheless, the "explanation" cited by the ALJ and referenced by the Commissioner (scattered throughout the ALJ's decision) merely leaves the court with "a shotgun blast of evidence without adequate analysis in hopes that the reviewing Court will gather the scattered pellets into some semblance of analytic thought." *Fulfer v. Astrue*, 917 F. Supp. 2d 883, 887 n.2 (E.D. Wis. 2013). The Eleventh Circuit has declined to engage in such a post-hoc gathering of evidence. *See Owens*, 748 F.2d at 1516. The ALJ here simply failed to provide good cause supported by substantial evidence for rejecting Plaintiff's treating physicians' opinions and such failure warrants remand in this instance.

### III. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider the weight given to the opinions of Drs. Sims and Marra, and give reasons therefor; and (b) conduct any further proceedings deemed appropriate.

2. Plaintiff's counsel be advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No.: 6:12-mc-124-Orl-22 (*In*

*re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*).

      3.    The Clerk of Court be directed to enter judgment accordingly and close the file.

      **DONE AND ENTERED** at Jacksonville, Florida, on July 26, 2017.

                                                MONTE C. RICHARDSON
                                      UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

20